IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BILLY BROWNING, et al., | : | CIVIL ACTION |
| | : | NO. 11-5466 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DATA ACCESS SYSTEMS, INC., et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    JUNE 5, 2012

TABLE OF CONTENTS

I.   INTRODUCTION..............................................2
II.  BACKGROUND................................................3
III. STANDARD OF REVIEW........................................6
IV.  DISCUSSION................................................8
     A.  Res Judicata.........................................8
         1.  Whether the Delaware Superior Court Dismissal was
             a Final Adjudication...........................11
             a.  Plain meaning of Rule 41(b)...............12
             b.  Whether Judge Silverman specified that
                 dismissal was not an adjudication on the
                 merits....................................19
         2.  Whether the Parties in the Delaware Action and
             the Instant Case are the Same or in Privity...23
     B.  Failure to State a Claim............................30
         1.  Conversion......................................31
         2.  Tortious Interference Claims...................33
         3.  Third-party Beneficiary Breach of Contract.....35
V.   CONCLUSION...............................................38

## I.   INTRODUCTION

Plaintiffs Billy Browning, B&B Brown, Inc., Onek, L.L.C., Korwit L.L.C, Eagle Visions Corp., Electronic Finance Transfer Corp., and American Cash Machine, L.L.C. (collectively, "Plaintiffs") bring this class action on behalf of themselves and all other similarly situated persons against Defendants-Data Access Systems, Inc., First Bank of Delaware, and Alonzo Primus (collectively, "Defendants").  Plaintiffs' Complaint pleads five counts: (1) conversion; (2) tortious interference with contractual relations; (3) breach of a third-party beneficiary contract; (4) tortious interference with prospective economic advantage; and (5) breach of contract.  Defendants-First Bank of Delaware and Alonzo Primus filed a motion to dismiss Plaintiffs' complaint alleging that res judicata bars Plaintiffs' claims, or, in the alternative, that Plaintiffs' Complaint fails to state a claim for which relief can be granted.

For the reasons that follow, the Court will grant Defendants' Motion to Dismiss and dismiss Plaintiffs' claims with prejudice as to Plaintiffs-Billy Browning, B&B Brown, Inc., Onek, L.L.C., Korwit L.L.C, and Eagle Visions Corp, and without prejudice as to Plaintiffs-Electronic Finance Transfer Corp. and American Cash Machine, L.L.C., with leave to re-file.

## II.   BACKGROUND[1]

Plaintiffs-Browning, B & Brown ("B&B"), Onek, Korwit, and proposed class members ("Merchant Plaintiffs") are a group of merchants that either own or operate automatic teller machines ("ATMs") located in their businesses.  Defendant-Data Access Systems ("DAS") provides the actual ATM system.  These particular ATMs do not directly dispense cash, but print out a receipt that the consumer then presents to Merchant Plaintiffs who then gives the consumer the money withdrawn from Merchant Plaintiffs' own cash-on-hand.  Merchant Plaintiffs operate the ATMs for profit by using their own cash and then receiving, at a later time, reimbursement of this cash and a portion of the ATM fee.  Merchant Plaintiffs contracted with Defendant-DAS to provide for this payment mechanism.  Plaintiffs-Eagle Visions Corp, Electronic Finance Transfer Corp. ("EFTC"), American Cash Machine, L.L.P. ("ACM"), and proposed class members function as distributors of Defendant-DAS's ATM systems ("Distributor Plaintiffs").  Distributor Plaintiffs contacted Merchant Plaintiffs to effectuate the sale of Defendant-DAS's ATM services.  Distributor Plaintiffs were paid a fee for each ATM transaction that occurred on Merchant Plaintiff's ATMs.

---

[1]     In accordance with the appropriate standard of review, see infra Part III, the Court takes the facts in this section from Plaintiffs' Complaint, accepts their truth, and construes them in the light most favorable to Plaintiffs.

To effectuate the reimbursement to Plaintiffs, Defendant-DAS contracted with nonparty TranSend, L.L.C. ("TranSend") to gain access to the Visa and Mastercard networks to complete the ATM transactions.  TranSend, in turn, had a contract with Defendant-First Bank of Delaware ("First Bank") to deposit the funds into Defendant-DAS's account with Defendant-First Bank.  Defendant-First Bank housed the funds for Plaintiffs' ATM transactions and sent those funds to nonparty Great Northern Bank ("Great Northern").  Defendant-DAS directed Great Northern to distribute funds pursuant to Defendant-DAS's contracts with Plaintiffs.  This system of middlemen and reimbursement worked without incident for several years.  In 2009, however, Visa and Mastercard discovered security breaches on Defendant-DAS's ATM system.  As a result, Defendant-First Bank (not Defendant-DAS) was required to pay fines to atone for these breaches.  Thereafter, Defendant-First Bank, by its then-president and CEO Defendant-Alonzo Primus, terminated its relationship with Defendant-DAS.  Defendant-First Bank then froze all funds held in connection with Defendant-DAS's ATM services thereby preventing the reimbursement of Merchant Plaintiffs and fee payment to Distributor Plaintiffs.

Defendant-DAS eventually filed an action against Defendant-First Bank in the Delaware Court of Chancery. Merchant Plaintiffs moved to intervene in that suit.  Now-

4

Chancellor Strine presided and ordered Defendant-First Bank to pay the frozen money to Merchant Plaintiffs.  After this payment, Merchant Plaintiffs' action against Defendants-DAS and First Bank was transferred to the Delaware Superior Court.  In the Superior Court case, Distributor Plaintiff-Eagle Visions joined Merchant Plaintiffs.  These Plaintiffs filed three Amended Complaints in the Delaware Superior Court.  Plaintiffs' Third Amended Complaint alleged five counts against Defendants-First Bank and DAS: (1) conversion; (2) negligence; (3) tortious interference with contractual relations; (4) breach of a third party beneficiary contract; and (5) tortious interference with prospective economic advantage.  Defendant-First Bank filed a motion to dismiss the Third Amended Complaint for failure to state a claim upon which relief could be granted.

On January 31, 2011, Judge Fred S. Silverman granted Defendant-First Bank's motion and dismissed all counts of Plaintiffs' Third Amended Complaint against Defendant-First Bank.  See Browning v. Data Access Sys., Inc., No. 09C-10-248, 2011 WL 2163555, at *1 (Del. Super. Ct. Jan. 31, 2011).  Eventually, Plaintiffs stipulated to dismissal of Defendant-DAS in the Delaware action.

After this dismissal, Plaintiffs filed a complaint in the Court of Common Pleas of Philadelphia County against Defendants.  Defendants timely removed to

this Court.  ECF No. 1.  Defendants-First Bank and Primus

(who was not a defendant in the Delaware action) then filed

the instant motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6) arguing that res judicata bars

Plaintiffs' claims, or, in the alternative, that

Plaintiffs' Complaint fails to state a claim upon which

relief can be granted.  ECF No. 3.  Plaintiffs' opposed

this motion.  ECF No. 5.  Defendants filed a motion for

leave to file a reply brief.  ECF No. 8.  The Court held

oral argument.  The motion is now ripe for disposition.


**III. STANDARD OF REVIEW**

        A party may move to dismiss a complaint for failure to

state a claim upon which relief can be granted.  Fed. R. Civ. P.

12(b)(6).  When considering such a motion, the Court must

"accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them

in the light most favorable to the non-moving party."

DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3d

Cir. 2007) (internal quotation marks omitted).  To withstand a

motion to dismiss, the complaint's "[f]actual allegations must

be enough to raise a right to relief above the speculative

level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

This "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."
Id.  Although a plaintiff is entitled to all reasonable
inferences from the facts alleged, a plaintiff's legal
conclusions are not entitled to deference and the Court is "not
bound to accept as true a legal conclusion couched as a factual
allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).

        The pleadings must contain sufficient factual
allegations so as to state a facially plausible claim for
relief.  See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co.,
583 F.3d 187, 190 (3d Cir. 2009).  "'A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged.'"  Id. (quoting
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In deciding a
Rule 12(b)(6) motion, the Court is to limit its inquiry to the
facts alleged in the complaint and its attachments, matters of
public record, and undisputedly authentic documents if the
complainant's claims are based upon these documents.  See Jordan
v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d
Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus.,
Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**IV.  DISCUSSION**

Defendants-First Bank and Primus (also referred to herein as "Defendants") filed the instant motion to dismiss arguing that res judicata bars Plaintiffs' claims, or, in the alternative, that Plaintiffs' Complaint fails to state a claim for which relief can be granted.

A.  Res Judicata

Defendants-First Bank and Primus contend that Plaintiffs' Complaint must be dismissed because it was dismissed on the merits in the Delaware Superior Court and, therefore, Plaintiffs are now precluded from filing suit alleging the same claims in this case.  Plaintiffs, on the other hand, contend that Judge Silverman, though he dismissed Plaintiffs' claims, did not dismiss their claims with prejudice.  Therefore, the Delaware case did not result in a final adjudication on the merits and res judicata does not bar Plaintiffs' claims.

As a threshold matter, the parties agree that Delaware law applies to the issue of res judicata.[2]  Under Delaware law,

_____

[2]      The issue of which state law a federal court sitting in diversity applies in ruling on a res judicata claim has been the source of recent confusion.  In Semtek International Inc. v. Lockheed Martin Corp., the Supreme Court held that when sitting in diversity a federal court is to apply the preclusion law of "the State in which the federal diversity court sits."  531 U.S. 497, 508 (2001).  In Nationwide Mutual Fire Insurance Co. v. George V. Hamilton, Inc., the Third Circuit cited Semtek and

res judicata bars a party "bringing a second suit based on the same cause of action after a judgment has been entered in a prior suit involving the same parties."  Betts v. Townsends, Inc., 765 A.2d 531, 534 (Del. 2000).  Specifically, the party

---

explained that because the district court was in Pennsylvania and siting in diversity, Pennsylvania's preclusion law applied when deciding whether a Pennsylvania state court's judgment barred the district court case.  571 F.3d 299, 310 (2009).  The Third Circuit's decision in Nationwide Mutual is true under the facts of that case — a state court issuing the judgment in the same state as the district court sits — it is not true when the state where the judgment rendered is different from the state in which the district court sits.  Semtek was a case about a dismissal from a federal court sitting in diversity and that dismissal's preclusive effect in a state court.  See Semtek, 531 U.S. at 506.  The language from Semtek that the preclusion law to apply is "the law that would be applied by state courts in the State in which the federal diversity court sits" refers to the federal diversity court that issued the underlying judgment that allegedly has preclusive effect in the second law suit, not the diversity court enforcing a state court judgment.  Id. at 508.  This rule unifies the preclusion law for judgments issued in state courts and federal courts siting in diversity.  Id. That is so because when there is a state court judgment, like in this case, the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, as implemented by the Full Faith and Credit Act, requires "all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."  Allen v. McCurry, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738); see also Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).  Thus, it seems, aside from the parties' agreement, Delaware law is the correct choice of law in this case.  See In re Diet Drugs, 282 F.3d 220, 239-40 (3d Cir. 2002) (applying Texas law to collateral estoppel claim despite district court sitting in Pennsylvania); see also Rick v. Wyeth, 662 F.3d 1067, 1069 (8th Cir. 2011) (comparing rule in Semtek to when there is state court judgment and noting that Full Faith and Credit Clause requires application of state law in which underlying judgment was rendered).

arguing that res judicata applies must prove the following five

elements:

> (1) the original court had jurisdiction over the
> subject matter and the parties; (2) the parties to the
> original action were the same as those parties, or in
> privity, in the case at bar; (3) the original cause of
> action or the issues decided was the same as the case
> at bar; (4) the issues in the prior action must have
> been decided adversely to the appellants in the case
> at bar; and (5) the decree in the prior action was a
> final decree.

Dover Historical Soc'y, Inc. v. City of Dover Planning Comm'n,

902 A.2d 1084, 1092 (Del. 2006).  With respect to Defendants-

First Bank and Primus's res judicata argument, Plaintiffs only

argue that the second and fifth elements are not met here.

Indeed, it is beyond dispute that elements one, three, and four

are met in this case.[3]  Accordingly, the Court turns first to

whether there was a final adjudication on the merits in the

Delaware action, if there was not, this is the end of the

inquiry as to all parties.[4]  If, on the other hand, there was a

---

[3]      Although Plaintiffs brought the new claim of breach of
contract in this case, they only asserted this claim against
Defendant-DAS.  Otherwise, there is a continuity of claims
asserted against Defendants-First Bank and Primus between the
Delaware action and this case.

[4]      The fifth element under Delaware law requires a final
decree.  Under Delaware law, such a decree is "generally defined
as one that determines the merits of the controversy or defines
the rights of the parties and leaves nothing for future
determination or consideration."  Tyson Foods, Inc. v. Aetos
Corp., 809 A.2d 575, 579 (Del. 2002).  In other words, whether
there was a final adjudication on the merits.

final adjudication, the Court then considers whether the parties in the Delaware action and the instant case are the same or in privity.

### 1. Whether the Delaware Superior Court Dismissal was a Final Adjudication

Defendants argue that Judge Silverman's dismissal was a final adjudication for res judicata purposes. In making this argument, Defendants rely on Delaware Superior Court Rule of Civil Procedure 41(b). In doing so, Defendants argue that Judge Silverman, in dismissing Plaintiffs' Third Amended Complaint, did not indicate in the opinion or otherwise that the dismissal was without prejudice. Therefore, it must be an adjudication on the merits. Plaintiffs, conversely, argue that Judge Silverman's opinion only dismissed their claims for "failure to state a claim" and such a pleading deficiency is not an adjudication on the merits for purposes of res judicata.

Delaware Superior Court Rule of Civil Procedure 41(b), which tracks the language of its federal counterpart, provides, in pertinent part:

> Unless the Court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this Rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

Del. Super. Ct. R. Civ. P. 41(b).  In attempting to defeat Defendants' Motion, Plaintiffs argue that under the plain meaning of Rule 41(b) Judge Silverman's dismissal was not an adjudication on the merits.  In the alternative, Plaintiffs argue that Judge Silverman "otherwise specifi[ed]" in his opinion that dismissal was not an adjudication on the merits. The Court finds both arguments unpersuasive.

### a.   Plain meaning of Rule 41(b)

In relying upon Rule 41(b), Defendants contend that Judge Silverman's dismissal of Plaintiffs' Third Amended Complaint was with prejudice because on its face Judge Silverman did not include in his opinion or order that dismissal was without prejudice.  Plaintiffs counter that Rule 41(b) does not have this effect, even if Judge Silverman did not indicate that dismissal was without prejudice because Judge Silverman's dismissal was for a defect in the pleadings — failure to allege sufficient facts to state a claim — and was not a valid and final personal judgment that would bar a subsequent suit for the same claims.  In making this argument, Plaintiffs rely upon the decision of the Delaware Chancery Court in Trans World Airlines, Inc. v. Hughes, 317 A.2d 114 (Del. Ch. 1974) [hereinafter Trans World].  See Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss 14, ECF No. 5 [hereinafter Pls.' Br.].

Trans World, involved litigation between the airline and its controlling shareholder, the defendant, Howard R. Hughes.  317 A.2d at 116.  The underlying suit for res judicata purposes was an action in the Southern District of New York alleging federal antitrust violations and a state law claim for breach of fiduciary duty.  Id. at 116-17.  Eventually, the case proceeded to the United States Supreme Court.  There, the Supreme Court held that the defendants were immune from suit for antitrust violations under the Civil Aeronautics Act.  Id. at 118 (citing Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363 (1973)).  On remand, the district court dismissed the plaintiff's suit in its entirety.  The plaintiff then filed suit in Delaware Chancery Court alleging the same breach of fiduciary duty by Hughes as it alleged in the federal suit.  Id. at 118. The Chancery Court held that for res judicata to apply, the previous suit must have resulted in a "valid and final personal judgment" in favor of the party invoking its application.  Id. at 119.  That is, the dismissal of the underlying suit was not for a "defect of pleadings, or parties, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action."  Id. (internal quotation marks omitted).  And, as the Supreme Court and other federal rulings only considered the

13

plaintiff's federal antitrust claims, res judicata did not bar the plaintiff's state law claims. Id. at 120.

The Chancery Court also considered the effect of Rule 41(b). With respect to this rule, the court stated, even though the district judge did not indicate the dismissal of the state law claim was without prejudice, for such a dismissal to have res judicata effect the plaintiff must have "completed the presentation of his evidence." Id. at 121 (emphasis in original). In the federal case the plaintiff never introduced any evidence. Id. Thus, Rule 41(b) did not act as an adjudication on the merits to bar the plaintiff's state claim. Id. Relying on Trans World, Plaintiffs argue that in order for Judge Silverman's dismissal to have preclusive effect, Plaintiffs must have presented evidence in the Delaware action. Thus, because Judge Silverman dismissed their Third Amended Complaint before such presentation of evidence, Plaintiffs argue that Judge Silverman's dismissal cannot be on the merits for purposes of res judicata.

Plaintiffs' argument fails in the face of the Delaware Supreme Court's opinion affirming Trans World in Hughes v. Trans World Airlines, Inc., 336 A.2d 572, 576 (Del. 1975) [hereinafter Hughes]. In Hughes, the Delaware Supreme Court examined whether the decision of the federal district court was an adjudication on the merits under Rule 41(b). The Delaware Supreme Court

14

stated that the opinion of the court entering the dismissal order "is particularly significant since Rule 41(b) attaches consequences to a dismissal (u)nless the Court . . . otherwise specifies." Id. at 576 (omission in original) (internal quotation marks omitted).  The court noted, "[t]he dismissal [in the federal action] was upon the merits as far as the federal claims [were] concerned," such was not the result for the state claim.  Id. (internal quotation marks omitted).  In making this determination, the court focused on the language of the district court's opinion where the judge wrote, "[I]t does not follow that such a dismissal (in the Federal Court) would be a bar to the nonfederal claims." Id. (internal quotation marks omitted).  The court concluded that under Rule 41(b), the district court's dismissal did not operate as an adjudication on the merits of the state claim because the district court judge had so specified in his opinion.  Id.  The court did not consider, as the Chancery Court did, whether at the time of the dismissal the plaintiff had completed the presentation of evidence.

Read properly, Hughes stands for the proposition that under Rule 41(b) a dismissal is to be deemed "with prejudice" unless, as in Hughes, the dismissing court otherwise stated in the dismissal order or opinion.[5]  Other Delaware court holdings

---

[5]      Under the terms of Rule 41(b), a dismissal "for lack of jurisdiction, for improper venue, or for failure to join a

are consistent with this conclusion.  See City of Wilmington ex rel. Water Dep't v. Lord, No. 5388, 1981 WL 383083, at *11 (Del. Super. Ct. 1981) ("[T]he dismissal of the complaint in the first condemnation action for failure to state a claim on which relief could be granted without specification of whether the dismissal was 'without prejudice' should, according to Rule 41(b), be deemed a judgment on the merits."); see also Ward v. Indian River Sch. Dist., No. 205, 1990, 1991 WL 12100, at *1 (Del. Jan. 4, 1991) ("A dismissal for failure to comply with Superior Court rules in this case operates as an adjudication on the merits because the Superior Court did not specify otherwise." (citing Del. Super. Ct. R. Civ. P. 41(b))).  Under Hughes therefore, there is no requirement, as suggested by the Chancery Court's decision in Trans World and relied upon by Plaintiffs, that a dismissal must be without prejudice unless a plaintiff has completed presentation of its evidence.[6]

---

party under Rule 19" would not be an adjudication on the merits. See Del. Super. Ct. R. Civ. P. 41(b).

[6]     The federal courts' interpretation of identical language under Federal Rule of Civil Procedure 41(b) is consistent with the Delaware courts' interpretation of Delaware Superior Court Rule of Civil Procedure 41(b).  See Paganis v. Blonstien, 3 F.3d 1067, 1071 (7th Cir. 1993); see also 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2373 n.47 (3d ed. 2008) (collecting cases).

Plaintiffs also point to Costello v. United States,
365 U.S. 265, 285 (1961).  In that case, the defendant had been
convicted of fraudulently obtaining a certificate of
naturalization.  Id. at 267.  The defendant, Costello, had
already been the subject of a previous denaturalization
complaint, but it was dismissed because the Government did not
submit an affidavit of good cause, which was a prerequisite to
bringing a denaturalization proceeding.  Id.

In affirming the lower court's denaturalization, the
Supreme Court addressed the defendant's argument that because
his previous denaturalization suit was dismissed, his second
suit was barred by res judicata.  Id. at 384.  The Supreme Court
rejected this argument and held that the defendant's dismissal
in his initial denaturalization suit was for "lack of
jurisdiction" because it was dismissed for failure to file an
affidavit of good cause.  And, therefore, the defendant's
initial suit did not have preclusive effect.  Id. at 285.  In
particular, Costello held that "lack of jurisdiction" under Rule
41(b) is not a narrow inquiry of personal or subject matter
jurisdiction.  Id. at 285.  Lack of jurisdiction "encompass[es]
those dismissals which are based on a plaintiff's failure to

comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim."[7]   Id.

Costello is not helpful to Plaintiffs.  In the instant case, unlike Costello and as explained more thoroughly below, Judge Silverman dismissed Plaintiffs' Third Amended Complaint for failure to state a claim, which is an adjudication on the merits and not a defect in the pleadings.  Moreover, there is no argument, nor could there be, that Judge Silverman's opinion fits any of the three exceptions listed in Rule 41(b) — "lack of jurisdiction, improper venue, or failure to join a party under Rule 19."  Del. Super. Ct. R. Civ. P. 41(b).

Under the circumstances here, the Court holds that, under a plain reading of Rule 41(b), because Judge Silverman did not specify that the dismissal was without prejudice, the dismissal of Plaintiffs' Third Amended Complaint in the Delaware action was an adjudication on the merits.

---

[7]     Costello also explained that Rule 41(b) did not alter the common law view of an adjudication on the merits.  That is, if a suit was "dismissed for defect of pleadings, or parties, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit."  Costello, 365 U.S. at 286 (internal quotation marks omitted).

b.   <u>Whether Judge Silverman specified that
dismissal was not an adjudication on the
merits</u>

Plaintiffs also argue that, despite the absence of the
express reference to the dismissal being "without prejudice,"
Judge Silverman otherwise specified within his opinion that the
dismissal was without prejudice within the meaning of Rule
41(b).

Judge Silverman dismissed Plaintiffs' Third Amended
Complaint concluding that Plaintiffs' claims did not meet
Delaware's standard for stating a cognizable claim — that "no
circumstances exist under which Plaintiffs could recover."  <u>See
Browning</u>, 2011 WL 2163555, at *2.  In so holding, Judge
Silverman stated:

> [T]he conversion claim is dismissed because the money
> was not Plaintiffs and the bank was not holding the
> money for them. . . .  The negligence claim is
> dismissed because First Bank owed no duty to
> Plaintiffs.  The breach of contract claim is dismissed
> because it is too vague.  Finally, the tortious
> interference claims are dismissed because Plaintiffs
> have not pleaded any facts suggesting First Bank was
> even aware they existed.

<u>Id.</u> at *1.  The Court will consider Plaintiffs' argument
that Judge Silverman otherwise specified that his dismissal
of Plaintiffs' Third Amended Complaint in the Delaware
action was without prejudice on a claim-by-claim basis:
first considering Plaintiffs' conversion claim, then their

tortious interference claims, and finally Plaintiffs' claim for breach of a third-party beneficiary contract.

Plaintiffs' conversion claim is easiest to analyze.  Judge Silverman is explicit in his opinion that Plaintiffs had no claim for the money held by Defendant-First Bank.  Id. at *2.  All they had was an expectation interest to the money.  Id.  An expectation to money does not state a claim under either Delaware or Pennsylvania law.  See infra Part IV.B.1.  There is nothing in his opinion that suggests this was not an adjudication on the merits or that additional facts would cure this legal infirmity.  Thus, Judge Silverman considered Plaintiffs' Third Amended Complaint and found the claim for conversion legally deficient and dismissed it with prejudice.

As for Plaintiffs' tortious interference claims, Judge Silverman held that because Plaintiffs did not allege that Defendant-First Bank was even aware of Plaintiffs' existence, Defendant-First Bank could not have intentionally interfered with Plaintiffs' current contracts or prospective business opportunities.  Id. at *4.  Again, the Court cannot divine any intent of Judge Silverman to otherwise specify that dismissal of this claim was not on the merits.

Finally, Judge Silverman dismissed Plaintiffs'
claim for breach of a third-party beneficiary contract
because Plaintiffs' claim was "too vague to put First Bank
on notice." Id. at *3.  Although at first glance this
language appears to be an invitation for further
specificity, examined carefully, it is not.  Judge
Silverman stated that Plaintiffs failed to indicate that
Defendant-First Bank intended to benefit Plaintiffs.
Indeed, Judge Silverman states that Plaintiffs requested
discovery to plead such facts, yet "Plaintiffs may not use
discovery to search for new causes of action." Id.  Given
Judge Silverman's rejection of Plaintiffs' plea for further
discovery, and in light of the fact that Judge Silverman
dismissed Plaintiffs' Third Amended Complaint, see infra
note 7, it follows, therefore, that Judge Silverman
intended for the dismissal to be on the merits.[8]

---

[8]     The Court also notes the procedural posture and case
history of the Delaware action.  Plaintiffs amended their
complaint three times.  After the second amendment, Defendant-
First Bank moved to dismiss.  Plaintiffs then moved for leave to
file a Third Amended Complaint. See Browning, 2011 WL 2163555,
at *2.  Judge Silverman, instead of ruling on Defendant-First
Bank's motion to dismiss Plaintiffs' Second Amended Complaint,
required the parties to consider dismissal of Plaintiffs' Third
Amended Complaint. Id.  Moreover, the Delaware case docket
reflects that after Judge Silverman's opinion, Plaintiffs never
sought leave to amend or reconsideration.  Nor did Plaintiffs
appeal.  Indeed, there was no action in the case for almost five
months.  After the Third Amended Complaint, and by requiring the
parties to consider dismissal of this Complaint rather than

Accordingly, as Judge Silverman did not otherwise specify within his dismissal of Plaintiffs' Third Amended Complaint, Rule 41(b) operates to make this dismissal on the merits and is a final judgment within the meaning of Delaware <u>res judicata</u> law.[9]

---

dismissal of Plaintiffs' Second Amended Complaint, Judge Silverman's dismissal was understandably with prejudice.

[9]       To be sure, there is language from <u>Semtek</u> interpreting Federal Rule 41(b) that states a dismissal with prejudice under Rule 41(b) is a "necessary condition, but it is not a sufficient one, for claim-preclusive effect in other courts." <u>Semtek Int'l Inc. v. Lockheed Martin Corp.</u>, 531 U.S. 497, 506 (2001). This language is not applicable here. Under Delaware law, a dismissal for failure to state a claim is a final judgment with preclusive effect. <u>See</u> <u>Duffy v. Kent Cnty. Levy Ct., Inc.</u>, No. 09-817, 2011 WL 748487, at *4 (D. Del. Feb. 23, 2011) (finding Superior Court dismissal for failure to state claim was final judgment on the merits for <u>res judicata</u> purposes); <u>Braddock v. Zimmerman</u>, 906 A.2d 776, 783-84 (Del. 2006) (holding final judgment results in Delaware regardless if complaint is dismissed with or without prejudice unless plaintiff is granted leave to amend and indicating that without prejudice means only that final judgment does not operate as <u>res judicata</u>); <u>see also</u> <u>Xu Hong Bin v. Heckmann Corp.</u>, No. 4802, 2010 WL 187018, at *4 (Del. Ch. Jan. 8, 2010) (holding in context of indemnification rights of corporate director under Delaware law that "Xu prevailed on the merits of Count III when I dismissed it for failure to state a claim"); <u>cf.</u> N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla, 930 A.2d 92, 93 (Del. 2007) (ruling on appeal for dismissal for failure to state claim and calling such dismissal final judgment). The same result is true under Federal Rule of Civil Procedure 12(b)(6). <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 399 n.3 (1981); <u>see also</u> 5B Wright & Miller, <u>supra</u>, § 1357 n.101 (collecting cases).

2.   <u>Whether the Parties in the Delaware Action and</u>
<u>the Instant Case are the Same or in Privity</u>

Having found that Judge Silverman's dismissal was on
the merits and has preclusive effect, the Court turns to whether
the parties in this action are the same or in privity with the
parties in the Delaware action.  As an initial matter, with
respect to named Plaintiffs-Browning, B&B, Onek, Korwit, and
Eagle Visions, it is clear that they are the same Plaintiffs as
in the Delaware action.  <u>Compare</u> Pls.' Compl. 2, ECF No. 1, <u>with</u>
Pls.' Third Amend. Compl. 1, Defs.' Br. in Supp. of Mot. to
Dismiss Ex. 2, ECF No. 3-3 [hereinafter Defs.' Br.].

Moreover, the addition of Defendant-Primus in this
case does not prevent <u>res</u> <u>judicata</u> from barring Plaintiffs'
claims under the theory that all defendants must be the same or
in privity with each other in the subsequent action.  Defendant-
Primus was at all times the agent of Defendant-First Bank as its
Chief Operating Officer and the person responsible for
Defendant-DAS's account that held Plaintiffs' alleged
reimbursement funds.  It was Defendant-Primus who allegedly made
the decision to freeze Defendant-DAS's account — and thus froze
the money to reimburse Plaintiffs — and also to terminate
Defendant-First Bank's contract with Defendant-DAS.  Plaintiffs
cannot now, after suing the principal (Defendant-First Bank) and
having their claims dismissed, sue the agent on the same theory

23

in hopes of obtaining a more favorable outcome.  See Turner v.
Crawford Square Apartments III, L.P., 449 F.3d 542, 549 n.11 (3d
Cir. 2006); see also Restatement (Second) of Judgments § 51
(1982).  Indeed, Plaintiffs do not provide any argument to the
contrary.  Accordingly, res judicata bars those Plaintiffs from
pursuing their claims in this Court individually or as a member
of any future class of Plaintiffs.

        The closer question, however, is whether Plaintiffs-
EFTC and ACM are in privity with the previously named Delaware
Plaintiffs.  Plaintiff-Eagle Visions was a named class
representative in the Delaware action purportedly representing a
class of distributors.  In this case, Plaintiffs-EFTC and ACM
are the purported class representatives of different classes of
distributors.  See Pls.' Compl. ¶¶ 2-4 (stating that Plaintiff-
Eagle Visions represents a class of "approximately 600
merchants" referred to as distributors, that Plaintiff-EFTC
represents a class of "approximately 650 merchants" referred to
as distributors, and that Plaintiff-ACM represents a class of
"approximately 450 merchants" referred to as distributors).
Thus, Plaintiffs-EFTC and ACM are both purposed class
representatives of similar, if not the same, class of Plaintiffs
that Plaintiff-Eagle Visions purportedly represented in the
Delaware case.

Under Delaware law, "[p]arties are in privity for res judicata when their interests are identical or closely aligned such that they were actively and adequately represented in the first suit." Aveta Inc. v. Cavallieri, 23 A.3d 157, 180 (Del. Ch. 2010). Yet, "prudence dictates caution when applying this flexible test." Id. "Preclusion can properly be imposed when the claimant's conduct induces the opposing party reasonably to suppose that the litigation will firmly stabilize the latter's legal obligations." Id. (emphasis in original) (internal quotation marks omitted).

Defendants argue that by just naming new class representative plaintiffs, here Plaintiffs-EFTC and ACM, Plaintiffs cannot escape res judicata's bar to subsequent suit for the same claims. In support, Defendants rely heavily on a California case, Alvarez v. May Department Stores Co., 49 Cal. Rptr. 3d 892 (Cal. Ct. App. 2006). In that case, the court held that collateral estoppel prevented the plaintiffs from seeking class certification in a claim for failure to pay overtime wages where such class certification was previously denied, despite the fact that the new representative plaintiff did not receive notice of the prior suit. Id. at 900. In balancing the due process interests of the plaintiffs and the purposes of collateral estoppel, the court held, "When a prevailing

25

party seeks to enforce a ruling denying class certification against an absent putative class member, the general principles of collateral estoppel apply." Id.  The new plaintiffs' interests, when litigating the issue of class certification that was already litigated, were adequately represented by the previous plaintiffs.  Id.

Alvarez is distinguishable from this case for three important reasons.  First, the court in Alvarez relied explicitly on the "virtual representation" theory of privity when it held that the previous proposed class representative adequately represented the new plaintiff's interests.  See id. at 901 ("[W]e conclude the Duran plaintiffs were the 'virtual representatives' of appellants.  The only difference we can discern between the parties is the name of the representative plaintiff.  The interested parties, their claims, and their counsel are the same.").  The Supreme Court in Taylor v. Sturgell, 553 U.S. 880, 904 (2008), rejected this theory.

Second, this case is not about re-litigating class certification, as the parties never moved for or litigated class certification in the Delaware action.  This

case is about the merits of the underlying claims, a more individualized issue than class certification.[10]

Third, and most persuasively, the Supreme Court recently held under similar facts to Alvarez that "[n]either a proposed class action nor a rejected class action may bind nonparties." Smith v. Bayer Corp., 131 S. Ct. 2368, 2380 (2011). Bayer involved proposed class actions for breach of warranties and violations of consumer protection laws for the defendant's allegedly harmful drug called Baycol. Id. at 2373. In that case a proposed class representative plaintiff McCollins brought suit against the defendant in West Virginia state court. Id. The defendant removed to the Southern District of West Virginia and eventually, after consolidation pursuant to the Judicial Panel on Multi-District Litigation, the District of Minnesota denied class certification. Id. Shortly after McCollins filed suit in West Virginia state court, another plaintiff, Smith, also filed a proposed class action against the defendant asserting similar claims in West Virginia state court. Id. After the district court denied class certification in McCollins's case, the defendant

---

[10]     The Court also notes that Alvarez was a case on issue preclusion, which is a somewhat farther reaching type of preclusion.

moved for the district court to enjoin class certification in Smith's state court case.  Id.  The district court granted the defendant's motion and enjoined Smith's class certification.  Id. at 2374.  The Court of Appeals for the Eighth Circuit affirmed.  The Supreme Court reversed.

The Supreme Court held that not only was the district court's injunction a violation of the Anti-Injunction Act, 28 U.S.C. § 2283 (2006), but the district court's denial of class certification had no preclusive effect on Smith's state court class certification because Smith was not a party in McCollins's class.  Id. at 2380. The Court explained that without a class certification, Smith could not be bound by the district court's class certification holding.  See id. at 2381 n.11 (citing list of scholarly sources that all agree that uncertified class action cannot bind proposed class member).

Notably, Bayer also addressed the concerns that Defendants have here over the possibility of repeated litigation by substituted class representatives.  See Defs.' Br. 12-13.  While the Supreme Court acknowledged the problem, it held that it flew "in the face of the rule against nonparty preclusion." Bayer, 131 S. Ct. at 2381. To assuage such concerns, the Supreme Court explained, "[O]ur legal system generally relies on principles of stare

28

decisis and comity among courts to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs." Id. But see Thorogood v. Sears, Roebuck & Co., Nos. 10-2407, 11-2133, --- F.3d ----, 2012 WL 1508226, at *5 (7th Cir. May 1, 2012) (explaining that policy concerns rejected in Bayer are "acute" in subsequent class actions with new class representatives).

In addition, the Court located a Delaware Chancery Court opinion that is entirely consistent with Bayer's holding. In Kohls v. Kenetech Corp., Vice Chancellor Lamb explained, in a discussion of privity under Delaware law, that proper notice to a nonparty in a class action will bind that nonparty. 791 A.2d 763, 769-70 (Del. Ch. 2000), aff'd, 794 A.2d 1160 (Del. 2002). Yet, it is "self-evident that if a litigant never seeks to and is never compelled to act in a representative capacity, the class of people that theoretically could have been represented by that litigation is in no way precluded from asserting their own claims in a subsequent proceeding." Id. (emphasis in original) (citing Restatement (Second) of Judgments § 42, illus. 5). Given the authority from the Supreme Court in Bayer, as well as the Delaware Chancery opinion in Kohls, the Court finds that because Plaintiffs-EFTC and ACM were non-parties to the Delaware action, and

the Delaware court never certified that class action,
Plaintiffs-EFTC and ACM are not in privity with the
Delaware action Plaintiffs.  Accordingly, Plaintiffs-EFTC
and ACM's claims are not barred by res judicata.[11]


    B.    <u>Failure to State a Claim</u>

        In the alternative, Defendants also move to
dismiss Plaintiffs' Complaint pursuant to Federal Rule of
Civil Procedure 12(b)(6).  Defendants argue that
Plaintiffs' Complaint fails to state a claim upon which
relief may be granted for each of Plaintiffs' following
claims asserted against Defendant-First Bank and Primus:

---

[11]      In the alternative, the Court finds that notions
of due process would necessitate the same result.  In a
class action for money damages, due process requires some
notice for res judicata to bar the nonparty plaintiffs.
See <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2559
(2011) ("In the context of a class action predominantly for
money damages we have held that absence of notice and opt-
out violates due process."); <u>Beer v. United States</u>, 671
F.3d 1299, 1308 (Fed. Cir. 2012) (holding that notice was
required for plaintiffs in Rule 23(b)(2) class action who
were not previously members of certified class when they
primarily sought money damages); <u>Bittinger v. Tecumseh
Prods. Co.</u>, 123 F.3d 877, 882 (6th Cir. 1997) (holding that
class plaintiff in Rule 23(b)(3) class action was not
barred from re-litigating same claims litigated by previous
class action because previous class was not certified).
Accordingly, Plaintiffs-EFTC and ACM's claims are not bared
by res judicata because, under the facts pleaded,
Plaintiffs-EFTC and ACM never received notice of the
Delaware action.

(1) conversion; (2) tortious interference with existing contracts and prospective economic advantage; and (3) breach of contract as a third-party beneficiary.[12]

### 1.   Conversion

Plaintiffs aver that Defendants converted their money by freezing Defendant-DAS's account that allegedly contained Plaintiffs' money for reimbursement.  Under Pennsylvania law, "conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." Stevenson v. Econ. Bank of Ambridge, 197 A.2d 721, 726 (Pa. 1964) (internal quotation marks omitted).  While money may be the subject of conversion, the failure to pay a debt is not conversion.  Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 581 (Pa. Super. Ct. 2003); see Sterrett v. Royal

---

[12]     As an initial matter, neither party performs a choice of law analysis.  Defendants initially cite to both Delaware and Pennsylvania law.  Plaintiffs responded to Defendants' Motion to Dismiss citing Pennsylvania law, and Defendants reply also citing Pennsylvania law.  Judge Silverman concluded that under either Delaware or Pennsylvania law Plaintiffs' claims failed.  The Court agrees.  But, as the parties' briefing mostly relies upon Pennsylvania law, at this stage of the proceedings the Court will apply Pennsylvania law.  And indeed, Pennsylvania law appears even more favorable to Plaintiffs than Delaware law. See infra notes 13-15.

Indem., Co., 26 Pa. D. & C. 254, 258 (Ct. Com. Pl. Phila. 1936) (holding that to maintain claim for conversion of money, defendant must have had "an obligation . . . to deliver specific money to plaintiff, or [] the money was wrongfully received by defendant" (internal quotation marks omitted)).  A claim for conversion may only lie if the plaintiff had a property right to the money, not merely a right based upon a contract.  See Kia v. Imaging Scis. Int'l, Inc., 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010).

     The key aspect to Plaintiffs' claims here is that, as the Court has already held that Plaintiffs-Browning, B&B, Onek, Korwit, and Eagle Visions's claims are barred by res judicata, the only Plaintiffs left in suit are Plaintiffs-EFTC and ACM, both distributors of ATMs. These distributors sold Defendant-DAS's ATM system and then received a fee for each ATM transaction.  Their compensation was not directly related to the money Merchant Plaintiffs provided to consumers, but was some percentage of the ATM fee that a consumer's bank would send to Defendant-First Bank.

     In this case, there are simply no facts to show how these Distributor Plaintiffs had any property right to money held by Defendants.  They may have had an expectation to be paid a fee for a transaction, but this was

contractual in nature between, presumably, Defendant-DAS and Plaintiffs-EFTC and ACM.  Thus, their claim for conversion fails as a matter of law.[13]

2.  <u>Tortious Interference Claims</u>

Plaintiffs also aver that Defendants tortuously interfered with their existing contracts and prospective economic advantage by freezing their reimbursement funds.

Under Pennsylvania law, a claim for tortious interference with current business contracts or prospective economic advantage requires proof of the following elements:

(1)  the existence of a contractual, or prospective contractual relation between the complainant and a third party;

(2)  purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

(3)  the absence of privilege or justification on the part of the defendant; and

(4)  the occasioning of actual legal damage as a result of the defendant's conduct.

---

[13]       Delaware law is less favorable to Plaintiffs.  To state a claim for conversion of money under Delaware law, there must be an "obligation to return the identical money delivered by the plaintiff to the defendant."  <u>Kuroda v. SPJS Holdings, L.L.C.</u>, 971 A.2d 872, 890 (Del. Ch. 2009).

<u>Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa.</u>, 7 A.3d 278, 288-89 (Pa. Super. Ct. 2010) (footnote omitted); <u>see also</u> <u>U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.</u>, 898 F.3d 914, 925 (3d Cir. 1990).  With respect to the second element, to survive a motion to dismiss Plaintiffs must plead some affirmative facts not mere conclusory or speculative allegations that Defendants intended to interfere with Plaintiffs' contracts or business expectancy.  <u>See</u> <u>Bioquell, Inc. v. Feinstien</u>, No. 10-2205, 2010 WL 4751709, at *7 (E.D. Pa. Nov. 23, 2010).

        In this case, Plaintiffs' Complaint fails to meet this standard.  Plaintiffs' Complaint pleads the conclusory allegation that "Primus and First Bank knew of the contractual obligations owed by DAS to Named Plaintiffs" and that "Primus and First Bank . . . knew their continued freezing and/or conversion of the money of Named Plaintiffs . . . would deter customers from using the businesses of Named Plaintiffs."  Pls.' Compl. ¶¶ 74, 84.  With respect to Distributor Plaintiffs-EFTC and ACM, the only Plaintiffs not barred by <u>res</u> <u>judicata</u>, Plaintiffs seem to argue that because Defendants contracted with TranSend to be the sponsor bank, and TranSend in turn had a contract with Defendant-DAS, and then Defendant-DAS had contracts with Distributor Plaintiffs, that Defendants knew of the

existence of Distributor Plaintiffs' contracts and alleged business expectancy.

Such an inference does not support a plausible claim.  At best, Defendants may have known about Merchant Plaintiffs, whose money was to be reimbursed, but there are no facts to support a plausible claim that Defendants had any knowledge of Distributor Plaintiffs, let alone knowledge of contracts between Distributor Plaintiffs and Defendant-DAS or other merchants, or any business expectancies, to intentionally interfere with either. Accordingly, Distributor Plaintiffs-EFTC and ACM's claims for tortious interference with existing and prospective contracts must fail.[14]

### 3.   Third-Party Beneficiary Breach of Contract

Plaintiffs aver that they are third-party beneficiaries to the contract between Defendants and TranSend. And, by freezing the funds in Defendant-DAS's account, Defendants breached this contract as to Plaintiffs.

---

[14]      Delaware law requires a plaintiff to show knowledge of the contract or business expectancy and an intentional interference.  See Lipson v. Anesthesia Servs., P.A., 790 A.2d 1261, 1285 (Del. Super. Ct. 2001); Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood, 752 A.2d 1175, 1182 (Del. Ch. 1999).

Under Pennsylvania law:

> [A] party becomes a third party beneficiary only where
> both parties to the contract express an intention to
> benefit the third party in the contract itself, . . .
> <u>unless</u>, the circumstances are so compelling that
> recognition of the beneficiary's right is appropriate
> to effectuate the intention of the parties, and the
> performance satisfies an obligation of the promisee to
> pay money to the beneficiary or the circumstances
> indicate that the promisee intends to give the
> beneficiary the benefit of the promised performance.

<u>Scarpitti v. Weborg</u>, 609 A.2d 147, 150-51 (Pa. 1992)

(emphasis in original). This well-settled Pennsylvania law

allows a third party to recover under breach of contract

even "though the actual parties to the contract did not

express an intent to benefit the third party." <u>Sovereign</u>

<u>Bank v. BJ's Wholesale Club, Inc.</u>, 533 F.3d 162, 168 (3d

Cir. 2008). Under this more flexible standard, Plaintiffs'

breach of contract claim depends on whether "recognition of

the right to performance in [Plaintiffs] is appropriate to

effectuate the intentions of both [Defendants and TranSend]

in entering into their [contract] and whether the

circumstances indicat[ed] that [Defendants] intended to

give [Plaintiffs] the benefits of the promised

performance." <u>Id.</u> (internal quotation marks omitted)

Plaintiffs fail to plead enough facts to make

such a claim plausible. The only non-conclusory fact that

Plaintiffs plead is that Defendants, in contracting with

TranSend, maintained an "escrow account" to reimburse
Plaintiffs.  As explained above, the chain of money and
middlemen in this case is summarized thus: a consumer uses
Merchant Plaintiffs' ATM, Merchant Plaintiffs provide the
consumer with cash from their own cash-on-hand, the Visa
and MasterCard networks then deposit the funds from the
consumer's bank into Defendant-DAS's account with
Defendant-First State pursuant to the agreement between
Defendant-First State and TranSend, Defendant-First Bank
then forwarded these funds to Great Northern Bank,
Defendant-DAS then directed Great Northern Bank to
reimburse Plaintiffs.  Other than this description of
events and the bald claim that the money held by Defendant-
First Bank contained the ATM fees to be paid to Distributor
Plaintiffs, Plaintiffs plead no facts to suggest that
Defendants even knew about Distributor Plaintiffs.  Without
such knowledge, there can be no plausible claim that
Defendants intended to confer a benefit upon Distributor
Plaintiffs.  The conclusion from the pleaded facts is that
Defendants had no intent, and indeed no control, over
whether Distributor Plaintiffs received their contracted
fee.  Thus, Distributor Plaintiffs-EFTC and ACM cannot be

viewed as third-party beneficiaries to Defendants and TranSend's contract.[15]

**V.    CONCLUSION**

For the reasons stated above, the Court will grant Defendants' motion to dismiss.  The Court will dismiss with prejudice Plaintiffs-Browning, B&B, Onek, Korwit, and Eagle Visions's claims as barred by res judicata, and will dismiss without prejudice Plaintiffs-EFTC and ACM's claims for failure to state a claim upon which relief may be granted.  Plaintiffs-EFTC and ACM may file an amended complaint.

---

[15]    Delaware law requires a showing that the parties intended to benefit the third-party beneficiary, but Delaware law also requires this benefit to be a material part of the contract's purpose.  Insituform of N. Am., Inc. v. Chandler, 534 A.2d 257, 270 (Del. Ch. 1987).